**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION**

| | |
|---|---|
| **HASKINS CONSTRUCTION, INC.,** | ) |
| | ) Cause No. CV-10-163-BLG-RFC |
| Plaintiff, | ) |
| | ) |
| v. | ) ORDER GRANTING MID- |
| **MID-CONTINENT CASUALTY CO.,** | ) CONTINENT JUDGMENT AS A |
| | ) MATTER OF LAW |
| Defendant. | ) |
| _____ | ) |

**I.   INTRODUCTION**

Plaintiff Haskins Construction, Inc. filed this action seeking a declaratory judgment that its insurer, Defendant Mid-Continent Casualty Company, has a duty to defend and indemnify it in an underlying lawsuit. Pending before the Court are the parties' cross-motions for partial summary judgment. Mid-Continent asks the Court to declare it has no duty to defend Haskins in an underlying lawsuit (*doc. 22*), whereas Haskins's motion argues the Court should declare that Mid-Continent's policy covers the underlying lawsuit (*doc. 28*).

**II.   FACTUAL BACKGROUND**

Haskins Construction, Inc. ("Haskins") is construction company based in Carbon County, Montana. Gary Haskins is its principal and sole employee. Mid-

1

Continent Casualty Company ("Mid-Continent") is an Oklahoma-based insurance company that issued a commercial general liability ("CGL") Policy to Haskins for the period of May 27, 2006 to May 27, 2007.

During the policy period, Haskins built a home in Silvergate, Montana for John and Ann Graham using a log home kit manufactured by Neville Log Homes. The Grahams were not satisfied with Haskins's work and filed suit in Montana's Sixth Judicial District on February 20, 2009. The Grahams claim Haskins's faulty workmanship caused more than twenty defects in their home. They seek damages for costs and repairs, alleging causes of action for breach of contract, negligence, construction defects, and violation of the Montana Consumer Protection Act. Haskins tendered the lawsuit to Mid-Continent, but Mid-Continent rejected the tender of defense on April 9, 2009. On March 23, 2010, the Grahams filed an Amended Complaint and Mid-Continent again rejected Haskins's tender of defense. Mid-Continent's position is that the Graham's lawsuit does not allege "property damage" caused by an "occurrence" and that exclusions in the policy exclude coverage for contractual liability and faulty workmanship.

Haskins filed this action on November 24, 2010 in Montana's Sixth Judicial District Court, Park County, seeking a declaratory judgment that Mid-Continent has a duty to defend and indemnify it in the underlying action. Mid-Continent

removed the declaratory judgment action to this Court on December 23, 2010.

## III.  ANALYSIS

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2).  The issues presented by the parties' motions are particularly appropriate for summary judgment since the material facts are not in dispute (*doc. 30, p.1*) and the interpretation of an insurance contract is a question of law for the Court to decide.  *Newbury v. State Farm Fire & Cas. Ins. Co.,* 184 P.3d 1021, 1024 (Mont. 2008).

### A.  ALLEGATIONS IN THE GRAHAMS' AMENDED COMPLAINT FALL WITHIN THE BASIC SCOPE OF COVERAGE

As an initial matter, Mid-Continent is only seeking a ruling that it bears no duty to defend Haskins in the underlying action, whereas Haskins asks the court to declare a duty to defend and indemnify.  An insurer's duty to defend is independent from and broader than the duty to indemnify.  *Thomas v. Nautilus Ins. Co.,* 2011 WL 4369519 , *3 (D.Mont. Aug. 24, 2011) (slip op.), *citing United Nat'l Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1269 (Mont. 2008).  An insurer has a duty to defend if an insured alleges facts that, if proven,

would result in coverage. *Id. citing Plum Creek Marketing, Inc. v. American Economy Ins. Co.,* 214 P.3d 1238, 1247 (Mont. 2009). "While the duty to defend thus arises where the alleged facts even potentially fall within the scope of coverage, the duty to indemnify does not arise unless the policy actually covers the alleged harm." *Id.* (internal quotations omitted). Accordingly, although there can be no duty to indemnify where there is no duty to defend, a court could find a duty to defend as a matter of law in the early stages of a case when all evidence must be viewed in the light most favorable to the party opposing summary judgment only to have the ultimate fact-finder decide on the merits of the case that there is no duty to indemnify. *Id., citing Skinner v. Allstate Ins. Co.,* 127 P.3d 359, 363 (Mont. 2005).

In deciding whether Mid-Continent had a duty to defend Haskins in the underlying lawsuit, this Court must liberally construe the allegations in the Grahams' Amended Complaint so that all doubts about the allegations are resolved in favor of finding a duty to defend. *Id., citing Farmers Union Mut. Ins. Co. v. Staples,* 90 P.3d 381, 383 (Mont. 2004). Because the fundamental purpose of an insurance policy is to protect the insured, courts must narrowly construe exclusions from coverage. *Id.* This means that the insurer has a duty to defend unless there is an "unequivocal demonstration" that the claim against an insured is

4

not covered by the insurance policy. *Id.* Finally, if there is a duty to defend one claim alleged in a complaint, the insured must provide a defense for the whole case even if there is no possibility the remaining claims would be covered. *Id.* at * 4, *citing Home Ins. Co. v. Pinski Bros. Inc.,* 500 P.2d 945, 949-50 (Mont. 1972).

In interpreting an insurance contract, the Court must construe the terms according to their usual common sense from the perspective of a reasonable consumer of insurance products. *Thomas,* 2011 WL 4369519, *5, *citing Allstate Ins. Co. v. Wagner-Ellsworth,* 188 P.3d 1042, 1046 (Mont. 2008). Although Montana courts must construe insurance policies in favor of the insured, *Travelers Cas. and Sur. Co. v. Ribi Immunochem Research, Inc.,* 108 P.3d 469, 474 (Mont. 2005), they must also enforce clear and explicit terms as they are written. *Wagner-Ellsworth*, 188 P.3d at 1046. The insured bears the burden of establishing that the claim falls within the basic scope of coverage. *Ribi Immunochem Research, Inc.,* 108 P.3d at 476. The insurer, however, bears the burden of proving the applicability of policy exclusions. *Id.* Finally, the insured must prove the applicability of an exception to an exclusion. *Id.* at 477

Haskins alleges paragraphs 17, 18, and 19J of the Grahams' Amended Complaint–all pertaining to the cause of action for negligence–fall within the scope of coverage of Mid-Continent's policy. These paragraphs provide:

5

17. Haskins breached this duty when it or its subcontractors caused property damage to Neville Log Homes' materials such that Haskins or its subcontractors failed to install any settling devices or slip joints in the framed walls, failed to install settling devices or slip joints when the doors and windows were installed and failed to install the doors and windows according to plans and specifications.

18. Haskins breached its duty of care when it caused property damage to the deck and sub-floor installed in October, 2006 when it failed to properly seal the deck and sub-floor for the on-coming winter.

19J. Haskins further breached this duty when it or its subcontractors negligently performed the following work: defective installation of chimney resulting in water damage to interior of the home.

*Doc. 4-2.*

In relevant part, Mid-Continent's Property Damage Liability coverage requires Mid-Continent to pay those sums that Haskins became legally obligated to pay as damages because of "property damage" caused by an "occurrence."[1] *Doc. 4-1, p. 11.* It also requires Mid-Continent to defend Haskins against any lawsuit seeking damages for "property damage." *Id.* The first issue is whether Haskins can prove there was "property damage" caused by an "occurrence."

In relevant part, the policy defines "property damage" as "physical injury to tangible property." *Doc. 4-1, p. 24.* "Occurrence" means "an accident, including

---

[1] Other requirements for coverage, such as that the "occurrence" take place in the "coverage territory", that the "property damage" occur during the policy period and that no insured or "employee" of an insured knew of the "property damage" prior to the policy period, are not at issue in this case. The "bodily injury" liability coverage is also not at issue.

6

continuous or repeated exposure to substantially the same general harmful conditions. *Doc. 4-1, p. 25.* Construing the term "property damage" as it must, paragraphs 17, 18, and 19J sufficiently allege property damage. Moreover, since the Montana Supreme Court has held that, from the insured's standpoint, the term "accident" means "any unexpected happening that occurs without intention or design on the part of the insured," *Blair v. Mid–Continent Casualty Co.*, 167 P.3d 888, 891 (Mont.2007), "occurrence" encompasses the faulty workmanship alleged in paragraphs 17, 18, and 19J of the Grahams' Amended Complaint. *See Thomas,* 2011 WL 4369519, * 6 (applying insuring agreement to hold that negligent construction falls within the scope of coverage).

Having concluded that Haskins has met his initial burden of proving at least a few allegations of the Grahams' negligence claim falls within the basic scope of coverage, the question now becomes whether Mid-Continent can prove the applicability of any one of the policy's various exclusions. *Ribi Immunochem Research, Inc.,* 108 P.3d at 476. As noted, Mid-Continent argued the applicability of several exclusions in its opening brief, but as Haskins's response clarified its arguments for coverage, only Exclusionary Endorsement CG 22 94 10 01 is at issue.

### B.     MID-CONTINENT IS NOT ESTOPPED FROM RELYING ON CG 22 94 10 01.

Before addressing the applicability of Exclusionary Endorsement CG 22 94 10 01, the Court considers Haskins's argument that Mid-Continent should be estopped from relying on because it did not expressly explain its reliance on CG 22 94 10 01 in letters denying coverage.

Haskins's estoppel argument is that Mid-Continent did not provide notice of its reliance upon Exclusionary Endorsement CG 22 94 10 01 in denying coverage for the Grahams' lawsuit, citing *Safeco Ins. Co. v. Ellinghouse*, 725 P.2d 217 (Mont. 1986) and Mont Code Ann. § 33-18-2-1(14).  Exclusionary Endorsement CG 22 94 10 01 modifies exclusion l of the Bodily Injury and Property Damage Liability coverage by removing the exclusion for work performed by subcontractors.  With CG 22 94 10 01 in place, Haskins's Mid-Continent policy does not apply to "'property damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'"  Without CG 22 94 10 01, the exclusion would not apply "if the damaged work or the work out of which the damage arises as performed on your behalf by a sub-contractor."

Mid-Continent's denial letters provide in relevant part:

We wish to advise you that the allegations and alleged damages
within the Complaint are not "Property Damage" arising from an

> "Occurrence". Further, as previously addressed within the insurance policy excerpts, there is no coverage for damage, defect, impairment, flaw or inadequacy of your work or product necessitating the repair, removal, replacement or recall, as provided under coverage A, exclusions j.(5), j.(6), m. and n. Exclusion a. excludes expected or intended injury and exclusion b. excludes contractual liability. Further, exclusionary endorsement CG 22 94 10 01, excludes damage to work performed by subcontractors on your behalf.
>
> **Consequently, Mid-Continent Casualty Company will not defend Haskins Construction, Inc. in the John and Ann Graham lawsuit.**

Letter from Mid-Continent dated April 9, 2009, *doc. 25-2, p. 6*.

> We wish to advise you that the allegations and alleged damages within the Complaint are not "Property Damage" arising from an "Occurrence". Further, as previously addressed within the insurance policy excerpts, there is no coverage for damage, defect, impairment, flaw or inadequacy of your work or product necessitating the repair, removal, replacement or recall, as provided under coverage A, exclusions j.(5), j.(6), m. and n. Also, exclusion j.(2) excludes contractual liability and k. excludes damage to your product. Further, exclusionary endorsement CG 22 94 10 01, excludes damage to work performed by subcontractors on your behalf and ML 12 17 04 01 Excludes Fungus, Mildew and Mold.
>
> **Consequently, Mid-Continent Casualty Company will not defend Haskins Construction, Inc. in the John and Ann Graham lawsuit.**

Letter from Mid-Continent dated June 2, 2010, *doc. 25-3, pp. 6-7*.

In support of his estoppel argument, Haskins claims that in *Safeco Ins. Co. v. Ellinghouse*, the Montana Supreme Court estopped Safeco from denying coverage because it had previously failed to provide a reasonable explanation of

the basis in the insurance policy for denying coverage. *Doc. 34, p. 4*. But that is not how this Court reads *Ellinghouse*. In *Ellinghouse*, Safeco initially agreed there was coverage and provided its insured with a defense lawyer only to deny coverage eighteen months later. 725 P.2d at 219-20. In affirming the district court's decision that Safeco was estopped from denying coverage, the Court applied the general rule that where an insurer assumes a defense of a case without a reservation of rights it cannot later deny coverage. *Id.* at 221. This is not the case here, where Mid-Continent has denied coverage from the beginning. Although the *Ellinghouse* Court did note that the Montana Unfair Trade Practices requires insurers to "promptly provide a reasonable explanation of the basis in the insurance policy in relation to the facts or applicable law for denial of a claim ...," *Id.*, citing Mont. Code Ann. § 33-18-201(14), the prejudice Safeco caused to Ellinghouse's defense by agreeing to defend him and later withdrawing was the justification for estoppel.

That prejudice to the insured is necessary for estoppel based on the insurers failure to notify insureds of all policy defenses was confirmed by this Court in *EOTT Energy Operating Ltd. Partnership v. Certain Underwriters at Lloyd's of London*. 59 F.Supp.2d 1072, 1078 (D.Mont. 1999). There, this Court held that an insurer, in a UTPA action addressing whether they had a reasonable basis for

denying a claim, should not be estopped from relying on grounds for denial that were not stated in their denial letter, so long as there was no prejudice to the insured. 59 F.Supp.2d at 1078. In so holding, the Court noted *Ellinghouse* and another Montana Supreme Court case cited by Haskins, *Portal Pipeline Co. v. Stonewall Ins. Co.*, 845 P.2d 746 (Mont. 1003), had required such prejudice, despite § 33-18-201(14).

Since Mid-Continent has denied coverage from the outset, there is no prejudice. Without prejudice, there is no ground for estoppel.

Moreover, the April 9, 2009 and June 2, 2010 denial letters made clear that there was no coverage for Haskins's flawed or inadequate work: "Further, as previously addressed within the insurance policy excerpts, there is no coverage for damage, defect, impairment, flaw or inadequacy of your work ..." *Doc. 25-2, p. 6; doc. 25-3, pp. 6-7*. Although Mid-Continent could have been more precise in its denial, perhaps by citing exclusion l or by citing CG 22 94 10 01 at the end of that sentence, there is no question that Haskins should have known that Mid-Continent was denying coverage because its insurance policy did not cover property damage caused by faulty workmanship.

### C. CONSISTENT WITH THE PREMISE THAT A CGL POLICY DOES NOT INSURE BUSINESS RISKS, CG 22 94 10 01 PROHIBITS COVERAGE FOR THE GRAHAMS' LAWSUIT

Exclusionary Endorsement CG 22 94 10 01 replaces Exclusion 1, entitled "Damage To Your Work," and plainly provides that "[t]his insurance does not apply to '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.'" *Doc. 4-1, p 31.* More concisely stated, Exclusionary Endorsement CG 22 94 10 01 excludes coverage for "property damage" to "your [Haskins's] work" that is included in the "products-completed operations hazard." *Thomas,* 2011 WL 4369519.

As noted above, the Grahams' allegations meet the definition of "property damage." "Your work" means "[w]ork or operations performed by [Haskins] or on [Haskins's] behalf; and [m]aterials, parts or equipment furnished in connection with such work or operations." *Doc. 4-1, p. 25.* Again, this definition is satisfied here. Accordingly, if the property damage fits within the definition of the "products-completed operations hazard," the exclusion applies and there is no coverage. In relevant part, the "products-completed operations hazard":

> Includes all ... 'property damage' occurring away from premises you own or rent and arising out of ... 'your work' except ...
>
>> (2) Work that has not yet been completed or abandoned. However, 'your work' will be deemed completed at the earliest

>of the following times:
>
>>(a) When all of the work called for in your contract has been completed.
>>
>>\*\*\*
>>
>>(c) When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontracor working on the same project.
>
>Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

Here, Haskins admits that in "October, 2007, John Graham told him not to return to the site because he was having trouble with his financing. The job was substantially completed at that time, was put to its intended use by the Grahams and only required, at most, service, maintenance, correction, repair or replacement." *Doc. 30-2, ¶ 10.* Based on this admission, Haskins's work at the Grahams' home was complete. Because his work was complete, the exception to the "products-completed operations hazard" does not apply. Since that exception is inapplicable, the property damage is included in the "products-completed operations hazard," Exclusionary Endorsement CG 22 94 10 01 applies, and coverage is precluded. This is consistent with the principle that CGL policies are not intended to cover the

faulty work of an insured.  *Thoma*s, 2011 WL 4369519, * 6, *citing* 9A *Couch on Insurance,* § 129:1 (3d Ed. 1995).

Although Mid-Continent did not ask for summary judgment on its duty to indemnify, since it had no duty to defend, there can be no duty to indemnify.  *Skinner,* 127 P.3d at 363.  Mid-Continent is therefore entitled to judgment as a matter of law on Count I (declaratory judgment) and Count II (breach of contract) of Haskins's Complaint.

> D.   **MID-CONTINENT IS ALSO ENTITLED TO JUDGMENT AS A MATTER OF LAW ON THE STATUTORY AND COMMON LAW BAD FAITH CLAIMS**[2]

Having determined that Counts I and II lack merit, only Counts III (UTPA) and IV (common law bad faith) remain of Haskins's Complaint.  With respect to Count IV, Montana Code Annotated § 33-18-242(3) makes clear that an insured, like Haskins, may not bring an action for bad faith in connection with the handling of an insurance claim.  Although an insured may bring a common law bad faith claim against an insurer for conduct that does not constitute "the handling of an insurance claim," *Williams v. Union*

---

[2]Although the validity of Counts III and IV were not presented by the cross-motions for summary judgment, the law does not require the performance of idle acts. Mont. Code Ann. § 1-3-223, MCA.  To require this Court to await another motion for summary judgment from Mid-Continent on the bad faith claims would promote inefficient and idle acts.  *See Truck Ins. Exchange v. Waller,* 828 P.2d 1384*,* 1387-88 (Mont. 1992).

*Fidelity Life Ins. Co.,* 123 P.3d 213, 223 (Mont. 2005), the allegations in Haskins's Complaint contains no such allegations.  Accordingly, Mid-Continent is also entitled to judgment as a matter of law on Count IV.

With respect to the UTPA claim alleged in Count III, Haskins alleges that Mid-Continent misrepresented the pertinent facts or the policy terms of the insurance policy in denying coverage, in violation of Mont. Code Ann. § 33-18-201(1).  The Court, however, has already determined as a matter of law that consistent with the premise that a commercial general insurance policy does not cover business risk, Mid-Continent owed no duties to Haskins.  It is undisputed that Mid-Continent maintained from the initial tender of the Grahams' lawsuit that its policy did not cover Haskins's faulty workmanship.  Accordingly, the Court concludes as a matter of law that Mid-Continent had a reasonable basis in fact and law for contesting the claim and it therefore cannot be liable under the UTPA.

## IV.   ORDER

For those reasons, **IT IS HEREBY ORDERED** that Mid-Continent's motion for partial summary judgment (*doc. 22*) is **GRANTED** and Haskins's motion for partial summary judgment (*doc. 28*) is **DENIED:** Mid-Continent has no duty to defend or indemnify Haskins in the underlying

lawsuit and did not violate the UTPA or the common law duty of good faith and fair dealing in denying Haskins's insurance claim.

The Clerk of Court is directed to enter judgment in favor of Mid-Continent and against Haskins and close this case.

Dated this 3rd day of November, 2011.

>*/s/ Richard F. Cebull*_____
> Richard F. Cebull
> United States District Judge